UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

---

In re:

SONIA WALROND-ROGERS,

        Debtor

Chapter 7
Case No. 06-12739

---

SONIA WALROND-ROGERS,

        Plaintiff

v.

Adversary Proceeding
Case No. 06-1391

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION and SALLIE MAE,

        Defendant

---

## MEMORANDUM OF DECISION

This is one of the most difficult § 523(a)(8) student loan cases I have seen as it pits a

mother's commitment to care for her undisputedly seriously ill and impaired child against her

obligation to repay in excess of $275,000 of student loans. The mother acknowledges her

financial obligations to ECMC and Sallie Mae, but claims an "undue hardship" and states her

choice is between "getting rid of her child" to pay her loans or obtaining a discharge of these

loans under § 523(a)(8). This Memorandum constitutes findings of fact and conclusions of law

in accordance with Fed. R. Civ. P. 52 (made applicable to this proceeding by Fed. R. Bankr. P.

7052).

The Debtor earned her Associate degree in 1994 from Newbury College. She returned to Newbury from 1997 to 1998 to obtain a Bachelor's degree. From January 2000 to July 2001, the Debtor attended a graduate program at Boston College and earned her masters in finance. The Debtor then attended law school from August 2001 to May 2004, earning her J.D. As a result of her education, the Debtor has a consolidated debt to ECMC in the amount of $184,077.85. The Debtor also owes Sallie Mae a balance of $94,078.47 as a result of law school loans.

At the hearing, ECMC sought judicial notice of the Debtor's Schedules A and C and upon colloquy with the Court, agreed it was appropriate for the Court to take judicial notice of the remaining schedules as well. According to the Debtor's Schedule I, her income is $1,640.87 per month. The Debtor works part time as an attorney and lists her income from this work as $328.57. In addition, she receives $676.26 in SSDI payments for her daughter. Her remaining income comes from child support payments. The Debtor's Schedule J lists her expenses as $2,038.70.

The Debtor asserts that her income is insufficient to allow her to make payments on her student loans and that it will continue to be so in the future. The Debtor claims that she is unable to increase her income because she must care for her seriously ill eleven-year-old daughter Naomi.

At trial both Dr. Shahabuddin, the child's primary care physician, and the Debtor testified about the child's condition. Currently, the Debtor's child has been diagnosed with complex seizure disorder, arrested development disorder, autism, mental retardation, developmental disability and obesity. The child also has sleep apnea, arthritic problems and balance and coordination issues. The child is unable to sleep through the night, often waking up with seizures. She receives weekly physical therapy and sees a cadre of different professionals for

2

treatment. At times, she is confined to a wheelchair as a result of uncontrollable seizures.

Noises disturb her and result in seizures. She requires constant, 24/7 supervision and the Debtor

is the primary caregiver. The child's medications, which must be administered at least three

times a day, can only be administered by a doctor, registered nurse or parent. She is often late

for school as her inability to sleep results in her waking up late and being unable to maintain a

normal schedule. She is admitted to the hospital three or four times per month as a result of her

seizures.

The child's godmother, who assists in the child's care, also testified to the difficulty involved

in caring for her, and the child's aggressiveness. She stated that caring for Naomi is far more

difficult than taking care of her own children, who do not have medical difficulties.

This Court applies the totality of the circumstances test in determining whether excepting the

Debtor's loans from discharge would constitute an undue hardship. Under this test, the Debtor

must prove by a preponderance of the evidence that

> (1) her past, present, and reasonably reliable future financial resources (2) her and
> her dependents' reasonably necessary living expenses, and (3) other relevant facts
> or circumstances particular to the Debtor's case are such that excepting the
> student loan from discharge will prevent the Debtor from maintaining a minimal
> standard of living, even with the advantage of a discharge of her other pre-petition
> debts.

*In re Denittis*, 362 B.R. 57, 63 (Bankr. D. Mass. 2007).

"The ordinary meaning of hardship [is] privation, a lack of basic life necessities or comforts, and

undue hardship [is] a privation beyond reasonable limits." *In re Dufresne*, 341 B.R. 391, 395

(Bankr. D. Mass. 2006).

The monthly payment on the Debtor's Sallie Mae loans under a standard 180 payment plan

would be $690.88 per month. Sallie Mae does not offer an income contingent or alternative

repayment plan that would lower the monthly payment. The Debtor's schedules reflect a

3

monthly deficit of about $400.00. Even if the Debtor eliminated entertainment and charitable

contribution expenses in their entirety, the Debtor's expenses would still exceed her income.

The Debtor testified that she has begun performing tax work in addition to her law practice and

that she earned under $1,000 over the span of a month and a half from this activity and that she

expects her business to expand as time goes on. Assuming the best case scenario, that the

additional income is sustainable and the Debtor will continue to earn $1,000 for six weeks of tax

work, her income from such work is necessarily limited by the fact that tax season only comes

once a year. Therefore, even if the Debtor performs tax work for the first four months of the

year (an assumption the Court thinks favorable to Defendants), her increased income will not

give her a positive monthly income over a twelve month period.[1]  Consequently, the Debtor is

unable to make even the lowest monthly payment to Sallie Mae.[2]

The Court must then take into account the consolidated ECMC loan. Counsel for ECMC

urges that the Debtor has the ability to repay her student loans through the Ford Program without

suffering an undue hardship. ECMC sets forth various payment options: a 30 year payment plan,

25 year payment plan, graduated payment plan and income contingent payment plan. Under

both the 30 year and 25 year plans the Debtor's monthly payment would exceed $800 a month,

an amount clearly beyond the Debtor's current ability to pay. The payments on the graduated

repayment plan begin at $499.01 per month, an amount that exceeds the Debtor's monthly

---

[1] $1000 (six weeks' income) divided by six equals a weekly income of $166.66. Using this
approximation, four months of tax work would yield $2,666.66, giving the Debtor an additional
$222.22 in monthly income if divided over twelve months. The Debtor's schedules reflect that
her monthly expenses exceed her monthly income by about $400.
[2] Even if the Court were to consider partially discharging the Sallie Mae loans, the lowest
monthly payment the Debtor would be required to make would be $27.63, a sum that she would
be unable to afford given the amount by which her monthly expenses exceed her income.

income even if the Court adds tax preparation income and deducts all mounts spent for recreation or charitable contributions.

ECMC also argues that the income contingent plan is a viable alternative as the Debtor's initial payment would be $0 and would increase based on her adjusted gross annual income once her adjust gross income exceeded $14,000. The remaining balance on the loan would be forgiven at the end of 25 years. As this Court has noted before in *In re Denittis*, 362 B.R. 57, 64 (Bank. D. Mass. 2007), however, the Debtor may be left with a significant income tax liability based on the amount of debt forgiven. ECMC attempts to dispel this concern by explaining that an "insolvent debtor realizes taxable income from the cancelation of student loan debt at the end of the ICRP only if that cancelation somehow causes the debtor to have a positive net worth." Because the Debtor alleges that she is insolvent now and will be in the future, ECMC reasons that she will not suffer a tax liability in 25 years. ECMC overlooks the fact that the test of whether a student loan will be discharged is left to the Courts, not the drafters of the Ford Program. If Congress had intended that all loans eligible for $0 payments under the IRC must be included in the program, it would have said so. The test is not a solvency test nor does it require the Court to speculate as to the Debtor's insolvency 25 years in the future, rather, it considers income, expenses and other relevant facts in determining whether excepting the loans from discharge will cause the Debtor an undue hardship. Moreover, although ECMC put forth arguments about the Debtor's future solvency prospects, it offered no evidence on the issue.

The Debtor's schedules A and C list a one-fifth ownership interest in real property located in Dorchester, Massachusetts (the "Property"). Counsel for ECMC proffered a deed dated March 31, 2004 and recorded with the Suffolk County Registry of Deeds evidencing the Debtor's purported interest as well as a tax assessment to demonstrate the value of the Property.

5

The grantor, the Debtor's mother, retains a life estate in the Property via the deed. The Debtor

testified that although at some time prior to 1999 she had a 1/5 interest in the Property, she

transferred her interest to her daughter Amber in 1999 and only listed the Property on her

schedules out of caution in what she felt was an attempt to protect her mother's life estate in the

Property in the event such life estate was challenged by the Debtor's creditors. According to the

Debtor's testimony, the 2004 deed (Exhibit D1-4) was the result of a refinancing undertaken by

the Debtor's mother. In 2004, the mortgagee required that the Debtor transfer her supposed 1/5

interest to her mother, even though, as a result of her transfer to Amber, she held no interest at

the time. Subsequently, the 2004 deed (Exhibit D1-4) was recorded purporting to give the

Debtor back her 1/5 interest. In the Joint Pretrial Memorandum, the Defendants failed to list

either the deed or tax assessment as exhibits that they expected to offer at trial or to reference

specifically the issue of the Debtor's ownership in the Property in the statement of the

Defendants' case. Moreover, the Defendants, prior to trial, did not ask the Court to take judicial

notice of the Debtor's schedules or take any other action that would have apprised the Debtor

that the subject of her ownership in the Property would be at issue. As a result it was clear that

the Debtor was not totally prepared to address the issue of her interest in the Property. Although

the Debtor did not provide documentary evidence to support her testimony regarding the transfer

of her interest to her daughter, the Court finds her testimony credible and concludes that the

Debtor does not retain an interest in the property by virtue of the 1999 conveyance.

Additionally, the Defendants did not offer sufficient evidence to warrant a finding that there is

value in any interest the Debtor may have. The Defendants proffered a tax assessment, which is

of limited utility in valuing the Property, but failed to offer any evidence on the issue of

encumbrances. Finally, after having the opportunity to examine the Debtor, the Debtor's

schedules and the value of any interest asserted in and encumbrances on the property, the

Chapter 7 Trustee issued a Report of No Distribution. This supports the conclusion that the

Debtor does not retain an interest in the Property and that any such interest is of inconsequential

value.

The Court is convinced that based on the Debtor's current circumstances, she is unable to pay

either the Sallie Mae loans or the ECMC loan without suffering an undue hardship. Further, the

Debtor's testimony demonstrates that her current financial condition will continue.

The Debtor testified that it is her intention to continue to care for her daughter and that

institutionalizing her child was "not an option" for her. The Court finds credible the witnesses'

testimony regarding the level of care Naomi requires and the constant attention she requires. The

Debtor makes an effort to engage in the part time practice of law as her schedule permits, but her

daughter's medical needs necessarily limit her ability to increase her income in any meaningful

way, even taking into account her added income from preparing tax returns.

A further consideration is the fact that the Debtor testified that were her income to increase to

$35,000, she would lose her daughter's SSDI benefits. (Tr. 72-73). A component of the SSDI

benefits is the payment of medical expenses, which in this child's case are quite significant. If

the Debtor's income increased to $45,000, she would lose her rental subsidy. *Id.* Although it is

unlikely that her income would increase to that level, such an increase would result in a "one step

forward, two steps back" situation where most of her increased income would go towards

expenses that are currently covered by SSDI.

In its post-trial memorandum, ECMC raises the argument that the Debtor is self limiting her

employment given that she was able to complete her education while caring for her daughter.

The Court finds credible the Debtor's testimony regarding the difference between her ability to

7

attend school while caring for her daughter and her ability to work. First, the Debtor testified that when her daughter was younger, she was easier to control. As her daughter has grown older, she has become harder to manage due to a combination of increased aggressiveness and size (Naomi currently weighs 185 pounds). In addition, the Debtor explained that while she could miss classes and plan her studies around her schedule, the practice of law does not allow the same flexibility. The unpredictability and constancy of her daughter's needs preclude her from being able to reliably comply with firm deadlines and client demands.

ECMC also asserts in its post-trial memorandum that the Debtor has created her own hardship by incurring the loans with knowledge of her daughter's condition and as such the Debtor's request for an undue hardship should be denied. ECMC first argues that a debtor's claim of undue hardship must result from factors beyond the debtor's reasonable control and that a debtor may not negligently or willfully cause her own default. The cases cited by ECMC are cases of courts applying the third prong of the *Brunner* test, which requires that the Debtor have made a good faith effort to repay the loans. This court applies the totality of the circumstances test in determining whether the loans should be discharged. Moreover, even if the Court were to consider good faith a "relevant circumstance" under the totality test, the good faith standard under *Brunner* relates only to the effort to *repay* the loans, not whether the debtor incurred the loans in good faith. Finally, the cases cited by ECMC discuss self-imposed hardship as leading to a finding of lack of good faith in circumstances vastly different from the Debtor's situation, such as where the debtor bought a car or sent her children to private school to the detriment of her ability to repay the loans. *In re Roberson*, 999 F.2d 1132, 1136 (7th cir. 1993)(internal citations omitted). The Debtor's hardship stems from her daughter's very serious illness over which she has no control.

ECMC also cites the Court to *Goulet v. Educational Credit Management Corporation*, 284 F.3d 773 (7th Cir. 2002), a case it argues is "directly on point." According to ECMC, *Goulet* stands for the proposition that an undue hardship should not result from circumstances previously known to the Debtor. In *Goulet*, however, the Court was applying the second prong of the *Brunner* test, which requires that "additional circumstances exist indicating that [the debtor's current condition] is likely to persist for a significant portion of the repayment period of the student loans." *Goulet* is distinguishable on the basis that the debtors in those cases failed to prove that the conditions that pre-dated their loans impaired their ability to work. *Educational Credit Management Corporation v. Curiston*, 351 B.R. 22, 30 (D. Conn. 2006).

In *Curiston*, the District Court for the District of Connecticut observed that "no circuit court has held that a condition in existence at the time the debtor obtained the educational loan in question must be excluded from consideration in the persistence analysis, or that the debtor must show a worsening or exacerbation to carry his burden..." *Id.* Although the court in that case applied the *Brunner* test, the proposition that a court may consider pre-existing conditions applies in equal force to the totality of the circumstances test in that a court may consider the extent to which such conditions affect the Debtor's future income under the first prong or as a relevant circumstance under the third prong of the test. As the Court in *Curiston* observed, even if a debtor was unrealistically optimistic about her ability to repay her loans and maintain a minimal standard of living, the statute does not prohibit a finding of undue hardship "merely because the debtor suffers from a physical or mental condition that existed at the time she incurred the loans." *Id.* at 29.

Even if the Court were to take into account Debtor's knowledge of her circumstances at the time she incurred the loans as ECMC urges, the Debtor did not create her own hardship. The

9

Debtor's daughter was not diagnosed with autism until after the Debtor earned her Bachelor's degree. Further, the Debtor explained that for a period of time when she began law school, her daughter was off her seizure medications and seemed to show signs of improvement. Finally, the Debtor testified that her daughter's condition has grown steadily worse as she has grown older and bigger and that she had no way of knowing that her condition would develop as it has.

For these reasons, I find that requiring the Debtor to pay her entire student loan debt to ECMC and Sallie Mae is an undue hardship.

Defendant ECMC filed a Motion to Strike the portions of the Debtor's response to its post-trial memorandum that deal with monthly expenses and future expenses as well as any portions of the Debtor's response brief that rely upon those expenses. As grounds for its request, ECMC argues that the Debtor failed to introduce any evidence as to her current and future income and expenses. In reaching its decision, the only information regarding the Debtor's income and expenses relies upon by the Court was derived from the Debtor's schedules I and J as well as the Debtor's testimony regarding her expenses. To the extent that portions of the Debtor's response included information not contained in her schedules or elicited at trial, ECMC's motion is allowed and those portions are stricken.

A separate order shall issue.

Dated: June 17, 2008                    By the Court,

_Joel B. Rosenthal_

_____
Joel B. Rosenthal
United States Bankruptcy Judge